The next argument is docket number 23-1036, Caselas v. VeriFone. Mr. Fuller, whenever you're ready. Mr. Fuller, whenever you're ready. Good morning, Your Honors. If it pleases the Court, Scott Fuller on behalf of the Plaintiff-Appellant Caselas, LLC. The four patents at issue here recite eligible subject matter. We think that this panel can get there under either Step 1 or Step 2. We think the district court erred in both regards. But as for Step 1, again, the focus of these claims as according to the district court and as what the defendants want to argue is that it's just mere underwriting. Even taking that as a broad principle to which the claims might be addressed to a specific solution to underwriting as a general concept, under Step 1, these are specific tailored solutions. They do not preempt all forms of underwriting by any means. Underwriting can be done a multitude of ways that do not infringe these claims and do not practice the application of using specific chargeback data as the claims require on the front end of the processing step. So as a non-abstract application of this general principle, we think that Step 1 is dispositive. There's not an abstract idea captured in these claims, and the district court erred at Step 1. More as to Step 2 is where district court, we believe the opinion really falls apart and where defendants fail to establish that these claims are unconventional. The complaint in this case recites numerous paragraphs. There's about a dozen paragraphs that recite specific statements of fact, which, again, on a motion to dismiss must be taken as true. All of these statements of fact go directly to the heart of the matter, and that is whether or not the use of chargeback data in the processing of electronic payments at any step in the processing function was conventional as of the date of the invention. The factual statements in the complaint make it clear that at the time of the invention, no one was using chargeback data in processing. Ostho said, though, that you can't rely on the abstract idea to be your source of something unconventional or non-routine. In other words, even if your abstract idea is novel, that's not something that's going to help you pass muster under either Step 1 or Step 2 of Alice. And so the fact that you have a method, a business method, where you look up to see whether a would-be purchaser has been involved in chargebacks in the past before you consummate the transaction, I guess the question is, why isn't that business method just an abstract idea? And then under Step 2, why would that be given any credit in determining whether or not that could be regarded as an inventive step? This Court has on many occasions held that and recognized the fact that patents rely on existing technologies. There's cases, BASC, BDR, AMDOCS, where a new arrangement of existing pieces could still be inventive and unconventional. And if, to Your Honor's point, if the use of chargeback data later on after post-processing existed, this specific application, again, was unconventional. And the abstract idea of underwriting is not the use of chargeback data at a particular place in a processing step. So, Your Honor's point. Well, let's look at it this way. We've oftentimes been searching for some type of specific implementation that could be considered to be at least arguably a technical advance over conventional computers, computer networks. And here, to the extent that computers are being contemplated at all here, I mean, I think it's very hard to be able to identify something that is an advance of a preexisting computer on a technical level versus just simply carrying out some kind of looking up of information using the computer as a tool for that. Well, it's an unconventional data flow is the point of the invention that improves and provides multitude of benefits to merchants. And those are all laid out in the complaint as well, namely cost savings, savings on overhead, et cetera. So, the application, and again, the use of chargeback data at a particular place in the data flow, which was an unconventional practice is... Before you do a credit card transaction with a customer, you check that customer's credit score. And then you call up the credit score service, and then they look up the person's credit score, and then they tell the merchant, here's the customer's credit score. Would that be patent eligible? If looking up the customer's credit score at that point in the process at the time of the invention was unconventional, and if the complaint made specific factual averments to that point, then I would submit that at least on a motion to dismiss stage of a proceeding, which is where we are here, that those statements of fact taken as true would overcome the idea that it was unconventional because there are statements of fact to the contrary. But then we would... It's more to our 101 doctrine than just is it conventional. I'm not sure that I'm hearing any answer to what I understand Judge Chen's question to be. Put aside if it's conventional or non-conventional. If all you've done is take an abstract idea and say, use a conventional... put aside conventional, my fault. Here's an abstract idea. Do it on a computer. Haven't we said that that is not eligible for patenting? Putting aside whether it's conventional or unconventional? These claims do not recite, do underwriting using a computer. Fine. But how about my question? It's called a hypothetical. Okay. Or if it's just take the abstract idea and do it on a computer, don't we know if we know anything, that's not patent eligible? Absolutely. No question that that would be an abstract idea to take an abstract idea, use a computer to do it. Sure, under step one, that would be an abstract idea. But also under step two, we've said if all you added to step two is do it on a computer, you don't have a patent, right? I don't have any issue with that characterization of the law. Certainly, if you take an abstract idea, use a computer, I think you have an ineligible claim at that point. However, I do want to point, I do want to direct the court to another issue which is raised in our briefing and which has come up in multiple cases that I've been involved in. It has to do with what to do with the patent examiner's findings. I understand that the law is, and I have no quarrel with the law, that this court, district court, they owe no deference to the patent examiner. Certainly. This court is not obliged to abide by what a patent examiner does. However, in the context of a motion to dismiss, where there are underlying questions of fact, particularly what was conventional, is there preemption, these are questions of fact. The question arises, what do we do with the examiner's statements in that regard, which are set forth in the complaint, which are taken directly from the intrinsic record? Those statements of fact from the patent examiner should be, under a motion to dismiss standard, treated just like any other factual statement in the complaint, and that is that they should be accepted as true. They should allow for the drawing of all reasonable inferences. Which statements in the complaint are you referring to? The statements in the complaint that recite exactly what the, that define what the patent examiner said during prosecution. Right. Do you have those handy? I'm just. One moment, Your Honor. Bear with me, I apologize. Is it around 8304305? Thank you. Correct. Yes, Your Honor. Paragraphs, for example, paragraph 60, which you point to on appendix page 304, the statement that the examiner specifically addressed this issue of eligibility, and further down at the bottom of that paragraph 16, where he said that each of the claims includes inventive concept, there is no preemption. He said that multiple times. So, again, the question is. I disagree, however, with what he says, and if we disagree with his legal conclusion about step one on whether there's claims, the focus of this claim is on an abstract idea, then I don't see how much of any of these other conclusory statements can really hold up, even under a motion to dismiss. That there is an inventive concept and that there is no preemption, those are fact questions. I understand, as to step one, the question of what is or is not abstract is a question of law. So, you know, his conclusions in that regard do not really have much of an effect on a motion to dismiss. But his statements regarding preemption and statements regarding conventionality or, in this case, patent-eligible subject matter, is those are factual affirmance, which, as made in the complaint, be taken as true and would support the inference that the factual statements that the patent examiner made would be accurate. So, that was the point I wanted to raise in regard to patents. Mr. Fuller, I'm still having trouble understanding why we should consider this claim as anything more than directed to the abstract idea of underwriting. Because it provides a specific solution. There's a specific solution which is narrower, far narrower than just mere underwriting. The fact that it's been directed to a specific subset doesn't necessarily make that any different. I mean, that's just the same as in Alice. I would counter that with the statement that if you're going to say that the claim is directed merely to underwriting, that there is zero preemption concern, which from Alice we know is the basis for these, you know, the exceptions to patentability, there being no preemption would offset the idea that is directed to an abstract idea as broad as simple underwriting. I mean, it seems to me the thrust of your argument throughout has been that, well, this is new and different and is patent eligible because we're taking information about transactions and providing that information, cashback transaction information, providing that up front, and that's the difference. But that's exactly what underwriting is all about, correct? Underwriting as a concept is simply let's prevent bad things from happening from this financial transaction. By giving people information before the fact. I wouldn't have any reason to disagree with Your Honor's assessment of underwriting in that regard. But even abstract ideas, again, because this Court has held many times, if there is an inventive concept behind it, which in this case is the unconventional application of the chargeback data. Just to ask you real quick, on page 25 you described your claims as involving real-time point-of-sale chargeback. Is that your contention as to where in your claims does it require real-time point-of-sale chargeback? The term real-time doesn't appear in the claims, absolutely. But the point-of-sale, like for example, claim 20. Point-of-sale? I'm sorry? Is point-of-sale in the claims? No. Merchant terminal is. Is this a fair characterization of your claims? I believe so, yes. Yes, given the fact that there is a merchant terminal and the fact that the chargeback data is processed prior to or at the time of the processing of the transaction, ergo real-time. Okay. You've used up all your time, but we'll give you two minutes if you'd rather. Thank you. Let's hear from the other side. Thank you, Your Honors. May it please the Court. I think it's important in this case to just focus back on the claim language. We've been talking a little bit about the abstraction of how we would describe what is the claimed invention. But if we turn to the representative claim 20 of the 698 patent that's on the front cover of the blue and red brief, also at Appendix 75, we see that the claimed method recites receiving information regarding a transaction, processing the information, generating a report that includes prior chargeback information, and transmitting that report. So when we look at it and just stay really true to the language of the claims, I don't even need to go through levels of abstraction or characterization of the claim language. What we really have here is a purported invention that is receiving, processing, and transmitting information. Now, we've heard a couple of, and I think the Court hit the nail on the head about that being sort of generally an abstract idea of receiving and processing information. Now, Appellant talks about here, well, it's out of the abstract idea realm because we are doing it on the front end. We're doing a processing beforehand. But if you look at the claim language again, the only limitation regarding prior to the transaction is the receipt of information regarding a transaction. That is received prior to. There's no prior to completion of the transaction. But otherwise, it's just processing, generating, transmitting. So when you talk about the receipt of information prior to completion of the transaction, that is just timing of receipt. There's nothing about this invention that tells me the timing of receipt affects how the system or the method is going to receive it, how it's going to process it, how it's going to transmit it. There's nothing about that limitation or that aspect of the purported invention that means all of a sudden this is not an abstract idea. And I think that's particularly important because when you look at it and think about how the specification talks about the invention and the claim, it talks about consideration of a lot of different prior transaction information. Chargeback data is only one of those. But the system works sort of the same way regardless of what kind of data and at what point in time we are processing this data. For example, if you look at Appendix 64, it's the 698 patent at Column 9, Line 68. It says the apparatus and methods of this present invention can be utilized in order to provide information at any time during, prior to, or subsequent to a transaction. So we're talking about a system and method that's really agnostic to whether I'm getting stuff, I'm processing stuff on the front end or not. The processing, the receiving, and the transmitting is the same. And that ultimately leads to sort of the second step of Alice where we're talking about is there some inventive concept. If we're just talking about receiving, processing, and transmitting information and data, in this case it happens to specifically claim chargeback information, but there's nothing claimed or described in the patent, certainly not recited in the claim limitations that say, oh, because it's chargeback data, we have to treat it in a special way. I have to set up my system components in a different way. I have to do my processing in a different way. There is no limitation regarding how processing is done, how receiving is done, how transmitting is done. There is no limitations about what kind of components we're going to use, what sort of algorithms or software steps we're going to use that's different than just what a normal computer would use. And so I think, you know, we've heard a little bit about, oh, there is a specific solution, or there is a new arrangement of existing pieces. I think your honors hit the point exactly where the new arrangement is an abstract idea. There is no new arrangement of any actual processing step or any actual components or anything in the computer system. So what we have here ultimately when we come down to it is generally the idea of receipt, processing, and transmitting of data. At A20, the district court in analyzing Step 2 says, underwriting always occurs before a transaction. I don't know if that's disputed, but it jumped out at me as potentially a fact finding on a Rule 12 motion, possibly inconsistent with what's being alleged here. What's the basis for the district court making a statement like this on a Rule 12 motion, that underwriting always occurs before a transaction? Yes. So I think the court's characterization of, you know, the invention of underwriting, I think would use whatever title we wanted. I'm not even sure we need to go and characterize it as underwriting and then have a factual dispute as to what underwriting is. I think ultimately the point is what the claims are talking about and the way it's been characterized, even if you consider it as consideration prior to completion of a transaction. It's the illogical idea of if I'm going to use past data to inform a future decision, that's an abstract idea whether we want to say that's underwriting or characterize it as another sort of fundamental principle. That is just a logical, mental kind of approach that you would do with anything, right? If I'm going to keep historical data, what do I use it for? I use it to inform future decisions. And the assessment of data at one point in some sort of logical timeline is really what, you know, appellant here is trying to claim its invention as. And I would go a step further to say that the claims are not even so limited, right, are so specific. It talks about receiving information about a transaction prior to completion of the transaction. And then there's separate processing, generating a report, and transmitting. And, you know, if you go back and read the specification, there are things where we do this, use this invention and use this method, approve the transaction, but then would later hold back delivery of the goods that were purchased because I now have this information was sent to the merchant. So there's nothing about it that has to be done in the payment processing step. And as Your Honor pointed out, there is no point-of-sale limitation. There is nothing about processing at the point of execution of the sale. So I think the underwriting characterization is a little bit of a red herring to try and manufacture a dispute of fact. Preemption? The opposing counsel says there's no preemption here of underwriting. So if it's good, what's your response to that? Again, I think, you know, this is the game you play in the eligibility analysis of kind of the levels of abstraction. I think the way the district court characterized it is sort of viewing as generally what is being assessed here, right? I mean, what is being claimed? It's the receipt in processing and transmitting of information to assess risk, right? And that's what is being claimed here. And that does preempt it in the realm of when we are considering TARFAC information. So just because we've limited it to one type of data doesn't mean all of a sudden it's not an abstract idea, right? It's still just the concept that I'm going to take some kind of data and assess it prior to assess risk for a future transaction. Okay. Thank you. Thank you. Just very briefly, I did want to address one of the questions that you asked Judge Stark, and that is how do we know that underwriting occurs prior to all transactions? We don't. There's nothing in the record that supports that notion, and certainly nothing that supports the notion that the use of chargeback data at an early stage in the processing is in any way. Just to be clear, it just reports that underwriting always occurs before a transaction, which I read as if you're going to do underwriting, you always do it before the transaction. It shouldn't actually say we always do underwriting before a transaction. Does that change your point? No. The patent talks at length about the fact that at the time of the invention, there was a huge problem with fraud, et cetera, which would suggest that there was no underwriting done prior to these transactions, which is the reason for all the fraud and losses to all the merchants and what the patent talks about. I thought during your earlier colloquy with Judge Lynn, you had full agreement that underwriting occurs before you do a transaction. Did I misunderstand that colloquy? I'm not sure that I agree that underwriting always occurs before a transaction. I don't recall that being a question, but underwriting as a concept is, I think what Judge Lynn asked me is that what is underwriting? What are we talking about when we're talking about underwriting? We're just talking about preventing loss to a merchant or a financial institution based on some sort of transaction. So I don't know if the timing was ever really discussed. Well, I certainly was left with the impression that you agreed with my observation that underwriting occurred before the transaction is completed. Are you backing away from that? I am backing away from that. I don't know that to be true. I think in certain circumstances, absolutely underwriting occurs before the transaction, but in other transactions, not. Okay. All right. Thank you. Thank you, Mr. Fuller. The case is submitted.